IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-CR-103-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | MEMORANDUM AND |
| v. ) | RECOMMENDATION |
| ) | |
| KEWAN MARQUIS SHADE ) | |
| ) | |
| ) | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 28), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation. The Motion is fully briefed.

I. **Procedural Background**

On October 6, 2020, Defendant Kewan Marquis Shade was indicted on one count of knowingly possessing one or more firearms in and affecting commerce, knowing that he had previously been convicted of at least one felony, in violation of 18 U.S.C. § 922(g)(1). Doc. 1.

Defendant made his initial appearance on October 21, 2020, at which time his request for the appointment of counsel was granted. Also, the Government moved for pretrial detention. Assistant Federal Public Defender Emily Jones was assigned to represent Defendant.

1

On October 26, 2020, Defendant was arraigned. In addition, a hearing on the Government's motion for detention was held, the motion was granted, and Defendant was ordered detained pending trial.

On November 2, 2020, Ms. Jones filed an unopposed motion seeking leave to withdraw as counsel for Defendant on the basis of a conflict of interest that had been discovered. That motion was allowed by Order entered the following day and attorney James W. Kilbourne was assigned to represent Defendant.

Defendant's trial was subsequently continued to May 3, 2021.

On March 9, 2021, Defendant filed a Motion to Reconsider Detention Order or to Amend the Detention Order Based on New Evidence (Doc. 15). Following additional filings, and a hearing on April 2, 2021, Defendant's Motion to Reconsider Detention Order was denied. Doc. 21.

Defendant's plea deadline was extended to April 21, 2021 and trial was later continued to September 7, 2021.

On June 17, 2021, Defendant filed the Motion to Dismiss and a supporting memorandum. Following an extension of time, the Government responded on June 28, 2021. Defendant replied on July 6, 2021.

## II. Factual Background

### A. Evidentiary Hearing

There is no material disagreement between the parties as to the facts relevant to the Motion.

Defendant has not specifically requested an evidentiary hearing and describes what he believes the Government's evidence will be.

The Government states that the summary of the facts provided by Defendant is believed to be essentially correct, though notes that the summary omits details regarding Defendant's prior felony convictions. The Government also states that it "does not believe an evidentiary hearing would be useful in resolving the issues raised in the pleadings." Doc. 31 at 7.

For these reasons, and those described below, the undersigned has not conducted an evidentiary hearing regarding the Motion.

### B. Underlying Events

From the parties' filings, the factual background may be summarized as follows:

Defendant was previously convicted of certain felonies, including, according to the Government, multiple counts of Assault with a Deadly Weapon with Intent to Kill and Assault with a Firearm on a Law Enforcement Officer.

3

At some unknown point, Brad Beddow, a detective with the Asheville Police Department, opened an undercover Snapchat account. Subsequently, Detective Beddow added the account "oso_bloody19" as a "friend" to his Snapchat account.

The "oso_bloody19" account appeared to belong to Defendant and Detective Beddow observed Defendant in pictures posted to that account which pictures appeared to show Defendant in possession of a pistol and driving a Volvo.

On May 12, 2020, Detective Beddow was monitoring social media accounts on Snapchat, including the account "oso_bloody19." On that date, Defendant posted a picture of what appeared to Detective Beddow to be a Taurus firearm with the number "300" in the text associated with the picture. Detective Beddow interpreted this information to mean that the firearm was being offered for sale for $300. Later that day, Defendant, in another post, asked if anyone had a "glock for sale."

The following day, May 13, 2020, Detective Beddow saw another "snap" on Defendant's account in which Defendant was again displaying the Taurus firearm. This time, the full serial number, make, and model were visible and Defendant again posted it as being for sale for $300.

On May 20, 2020, Detective Beddow posted a picture of three Glock firearms on his undercover Snapchat account. He did not describe the firearms

4

as being for sale; the caption accompanying the picture, which was taken in Asheville, North Carolina, read "oddly satisfying." Defendant responded to that post and gave his cell number.

Over the next several days, "calls went back and forth attempting to set up a deal," and, finally, on May 27, 2020, Defendant met undercover detectives at a local grocery store. Defendant was alone and purchased three Glock semiautomatic pistols that officers had placed in a black and red backpack. The agreed-upon price for the firearms was $900, though Defendant actually paid only $700.

Officers then attempted to arrest Defendant, but he fled in an Infiniti SUV. In doing so, Defendant ran two red lights, passed stopped traffic by driving against the flow of traffic on the wrong side of the road, and finally turned into an apartment complex.

Officers located Defendant's vehicle parked in front of one of the buildings, surrounded the building, and found Defendant on a back balcony.

Defendant agreed to toss his keys down to detectives and told them that he was alone but that the apartment was locked. Officers opened the apartment and arrested Defendant inside. In the brush below the apartments, officers found the black and red backpack. One of the Glock pistols had fallen out of the backpack, but the other two were inside. Officers also talked to an employee of the apartment complex who stated that he witnessed Defendant

5

drive up to the building and run into his apartment, then run back to the Infiniti SUV and grab a red and black bag, and again run into his apartment.

Defendant was interviewed following <u>Miranda</u> warnings and initially gave a false story about the purchase of the firearms before officers told him that he had actually purchased them from an undercover officer. Defendant then admitted he had purchased the firearms for himself and said he needed them for protection/retaliation regarding shootings "involved at his home."

Defendant also mentioned having another firearm, a Taurus 9mm, which was in the center console of the Infiniti SUV. Defendant and his girlfriend signed consent to search forms and that firearm was also found. It appeared to be the same firearm seen in the Snapchat images and had been reported stolen.

Defendant admitted he had served 3 years for seven felonies and knew he was not supposed "to be around guns" because he is a convicted felon.

On May 29, 2020, the four (4) firearms and various rounds of ammunition that were seized were examined and it was determined that all of those items were manufactured outside of North Carolina.

### III. Analysis

Defendant argues that the pending Bill of Indictment should be dismissed "because it constitutes entrapment as a matter of law and for

violation of due process due to actions which were offensive to traditional notions of fundamental fairness." Doc. 29 at 14.

### A. Entrapment

"Government inducement and a defendant's lack of predisposition are the elements of an entrapment defense." United States v. Hare, 820 F.3d 93, 102 n. 7 (4th Cir. 2016).

"'[I]nducement' requires more than mere solicitation by the government." United States v. Hsu, 364 F.3d 192, 198 (4th Cir. 2004). "[I]t involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993). "Solicitation, by contrast, is the provision of an opportunity to commit a criminal act." Id.

The "predisposition" requirement "refers to the defendant's state of mind before government agents make any suggestion that he shall commit a crime; the government does not entrap a defendant, even if he does not specifically contemplate the criminal conduct prior to this 'suggestion,' if his decision to commit the crime is the product of his own preference and not the product of government persuasion." United States v. Hsu, 364 F.3d 192, 198 (4th Cir. 2004) (internal citations and quotation marks omitted).

In this case, Defendant argues that "the process for the sale of the firearms originated with the officials of the government and they implanted the idea of the purchase into the Defendant's mind." Doc. 29 at 10.

The Government counters that it "did not encourage the defendant to commit the offense conduct whatsoever, only reciprocating when approached by the defendant about the three Glock firearms." Doc. 31 at 6.

Based on the parties' description of the anticipated evidence, the undersigned has significant doubts as to whether Defendant is entitled to dismissal of the indictment under an entrapment theory. For example, the current forecast of evidence does not appear to reveal governmental conduct that went beyond mere solicitation; Detective Beddow posted a photograph of firearms to his Snapchat account with a caption that read "oddly satisfying" and Defendant responded. Likewise, again according to the current expected evidence, law enforcement personnel saw images of a person believed to be Defendant that were posted to Snapchat showing Defendant in possession of a pistol and in which Defendant was asking whether "anyone had 'a glock for sale'," which suggests that Defendant contemplated engaging in the alleged criminal conduct of possessing a firearm prior to the time that Detective Beddow posted the picture of the firearms.

### B. Due Process

Defendant also argues that the Court should dismiss the Indictment because the conduct of the Government was so shocking or outrageous that it violated his due process rights. Doc. 29 at 11.

For governmental action to be "so outrageous as to offend due process: the conduct must be shocking, or offensive to traditional notions of fundamental fairness." United States v. Hasan, 718 F.3d 338, 343 (4th Cir. 2013) (internal citations and quotation marks omitted). "The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the defendant." United States v. Hasan, 718 F.3d 338, 342–43 (4th Cir. 2013) (quoting Hampton v. United States, 425 U.S. 484, 490 (1976)).

The Fourth Circuit has noted that after Hampton v. United States, 425 U.S. 484 (1976), the "'outrageous conduct' doctrine survives in theory, but is highly circumscribed" and that the court "has never held in a specific case that the government has violated the defendant's due process rights through outrageous conduct." Id. at 343.

Here, Defendant argues that "law enforcement engaged in Constitutionally unacceptable conduct by engineering and directing this criminal enterprise for the illegal possession of firearms by a felon from start to finish." Doc. 32 at 8-9.

9

Defendant's due process argument also may face a difficult road; the evidence as described by the parties appears to portray a straightforward sting operation, which is not shocking or outrageous. United States v. Goodwin, 854 F.2d 33, 37 (4th Cir. 1988) ("Outrageous is not a label properly applied to conduct because it is a sting or reverse sting operation involving contraband.").

Nonetheless, the question remains whether the defenses Defendant has raised should be ruled upon prior to trial.

### C. Pretrial Consideration of the Defenses

As Defendant correctly notes, Rule 12 of the Federal Rules of Criminal Procedure states in part that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

Defendant argues that his entrapment defense may be considered pretrial and that the charges against him may be dismissed upon a finding that he was entrapped as a matter of law. Specifically in that regard, Defendant argues that "while pretrial resolution of alleged entrapment, if intertwined with the issue of intent, is seldom appropriate, it is not universally prohibited." Doc 29 at 5.

The Government likewise states that "entrapment is typically an affirmative defense, accepted or rejected by a jury, assuming the trial judge allows a jury instruction on it," but contends that this case presents the rare

10

scenario in which an entrapment defense may be considered as a matter of law before trial. Doc. 31 at 5.

In short, the parties each argue that the facts of this matter are so clear that the entrapment defense may properly be determined at this stage, though, of course, they contend that the facts support opposite outcomes.

When reviewing the denial of a pretrial motion to dismiss in <u>United States v. Osborne</u>, the Fourth Circuit explained that "the question of entrapment is generally for the jury, because it raises the issue of whether the criminal intent originated with the defendant or with the government's agents." 935 F.2d 32, 38 (4th Cir. 1991). That is, typically at the end of a jury trial the court determines whether there is adequate evidence to warrant giving an entrapment instruction to the jury; "the court may find as a matter of law that no entrapment existed, when there is no evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready and willing to commit it." <u>Id</u>.

The Fourth Circuit also noted that the degree of discretion that a trial court possesses to address an entrapment argument as a matter of law prior to trial "is less clear." While the court declined "to overturn the district court's resolution of the issue in a pretrial hearing in [that] rare case where there was absolutely no evidence to support an entrapment defense," it explained that

11

"we think that the pretrial resolution of alleged entrapment, intertwined as it is with the issue of intent, is seldom appropriate, and we do not want to be understood as putting our seal of approval upon this practice." United States v. Osborne, 935 F.2d 32, 38 (4th Cir. 1991).

Here, neither side has presented controlling authorities subsequent to Osborne indicating that the law in the Fourth Circuit has changed on this point.

Further, it is possible that additional information may be presented at trial and would provide the District Court with a more complete record upon which to consider Defendant's entrapment argument. For instance, no specific information has been provided as to the number of individuals who received or viewed Detective Beddow's post with the picture of the firearms, or the identities of those persons. Similarly, no further details have been provided as to the content of the subsequent calls that "went back and forth attempting to set up a deal," including whether they were primarily driven by law enforcement personnel or Defendant.

Consequently, and in light of the Fourth Circuit's guidance, the undersigned does not recommend that Defendant's entrapment argument be addressed as a matter of law in the pretrial context on the existing record, but rather that the District Court consider this defense at the time of trial and based on the evidence presented at trial. United States v. Barber, 56 F.3d 62

(4th Cir. 1995); see also, United States v. Mayfield, 771 F.3d 417, 441 (7th Cir. 2014) ("The two elements of the entrapment inquiry are not equally amenable to resolution before trial. Predisposition rarely will be susceptible to resolution as a matter of law. Predisposition, as we've defined it, refers to the likelihood that the defendant would have committed the crime without the government's intervention, or actively wanted to but hadn't yet found the means. This probabilistic question is quintessentially factual; it's hard to imagine how a particular person could be deemed "likely" to do something as a matter of law. The inducement inquiry, on the other hand, may be more appropriate for pretrial resolution; if the evidence shows that the government did nothing more than solicit the crime on standard terms, then the entrapment defense will be unavailable as a matter of law.").

As for Defendant's due process argument, such a defense was also addressed before trial by the district court in Osborne. In analyzing the issue on appeal and upholding the trial court's denial of the defendant's motion to dismiss on that basis, the Fourth Circuit did not make similar statements regarding the propriety of the pretrial determination of a due process defense. Nonetheless, the undersigned likewise recommends that Defendant's due process argument be considered in the trial setting and on a more complete record.

## IV. Recommendation

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss (Doc. 28) be **DENIED WITHOUT PREJUDICE** subject to renewal or further consideration at trial, as may be warranted.

Signed: July 12, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).